**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| HARBOR VILLAGE AT HARBOR SHORES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, THE SMALL BUSINESS ADMINISTRATION, and KELLY LOEFFLER, in her official capacity as Administrator of the United States Small Business Administration,<br><br>Defendants. | ) | Case No. ________________ |

# COMPLAINT

Harbor Village at Harbor Shores, LLC ("HVHS" or the "Company") alleges its complaint against Defendants United States of America, the United States Small Business Administration (the "SBA"), and Kelly Loeffler, in her official capacity as Administrator of the SBA ("Loeffler"), as follows:

## INTRODUCTION

1. Under Section 5003 of the American Rescue Plan Act ("ARPA"), enacted in March 2021, Congress created the Restaurant Revitalization Fund ("RRF"). This fund provided relief in the form of grants for certain eligible entities impacted by the COVID-19 pandemic. The statute defines "eligible entity" to

include, among others, "a restaurant, food stand, food truck, food cart, caterer, saloon, inn, tavern, bar, lounge, brewpub, tasting room, taproom." 15 U.S.C. § 9009c(a)(4)(A). The RRF Program is administered by the SBA and Loeffler.

2. Harbor Village at Harbor Shores, LLC ("HVHS" or the "Company") is a Michigan limited liability company whose primary asset is The Inn at Harbor Shores, a hospitality property located at 800 Whitwam Drive, Saint Joseph, Michigan. Its primary business units include restaurants, bars, and meeting and banquet facilities, all open to the public regardless of whether patrons are lodging guests. Food and beverage operations are a substantial activity of the business.

3. In May 2021, HVHS applied for an RRF grant, checking the boxes for "Restaurant," "Bar/Saloon/Tavern/Lounge," and "Inn." The SBA reviewed the Company's disclosures through its application process, including eligibility checks, IRS verification of tax information, and review of supporting documentation, determined that HVHS was eligible, and disbursed the full award of $258,863.88. The award was identified by Confirmation ID c92e00125196 and, although the grant award was not a loan, SBA Loan Number XXXXXX9004. HVHS used all RRF grant funds for eligible expenses before March 11, 2023, and submitted its Post-Award Report certifying its use of funds. HVHS also responded to the SBA's September 2023 request for additional documentation, after which the SBA took no further action for approximately two and a half years.

4. Loeffler became SBA Administrator in February 2025. Roughly a year later, the SBA—under her leadership—began demanding that RRF recipients repay awards the agency had approved years earlier. On February 18, 2026, nearly five years after approving the grant and after the covered period had ended, the SBA issued a Return of Funds determination (the "Demand Letter") reversing its prior determination and demanding that HVHS return the entire $258,863.88 grant, asserting that "Hotels and motels are not eligible entities" and that a restaurant within a hotel must have a separate Tax Identification Number. The SBA's reversal is based on informal administrative guidance—not on any statute, regulation, or the terms of the RRF application itself—and is arbitrary, capricious, an abuse of discretion, and not in accordance with law.

5. HVHS pursued administrative remedies. On March 17, 2026, HVHS timely sought reconsideration within the 30-day period; the SBA denied reconsideration on May 1, 2026. On June 16, 2026, the SBA issued an unsigned notice of intent to collect through administrative offset (the "Delinquency Notice"). HVHS then filed a Petition for Hearing with SBA's Office of Hearings and Appeals ("OHA") on August 19, 2026, which was also served on the SBA's Treasury Division at RRFWorkouts@sba.gov (the "Treasury Appeal"), to which the SBA never responded. HVHS responded to an August 20, 2026, Order to Show Cause on August 27, 2026. OHA dismissed the appeal as untimely on September 1, 2026,

thereby depriving HVHS of administrative review on the merits. In the dismissal order, Administrative Law Judge James Plott observed that OHA lacks an express delegation to hear RRF appeals and stated that HVHS "likely already possesses a RRF final agency action."

6. The SBA's determination that HVHS must repay the entire $258,863.88 grant, together with the Delinquency Notice, constitutes final agency action. Notably, none of these decisions was signed by, or identifies, an SBA official responsible for it.

7. HVHS brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702–706, to set aside the SBA's decision, made nearly five years after it approved HVHS's grant, to deem HVHS ineligible and demand repayment of the entire award, and seeks declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

8. The SBA waited nearly five years after approving HVHS's grant, and years after HVHS spent the funds and reported that use, before reversing course and declaring HVHS ineligible. It gave no reasoned explanation for the reversal and gave HVHS no meaningful opportunity to be heard before demanding repayment. The SBA's action is arbitrary and capricious, an abuse of discretion, contrary to law, and unsupported by substantial evidence, and it should be set aside under the APA. Unless this Court acts promptly, HVHS faces collection of $258,863.88, money it

spent long ago exactly as Congress directed, together with interest, penalties, and Treasury collection fees.

**THE PARTIES**

9. Plaintiff Harbor Village at Harbor Shores, LLC ("HVHS" or the "Company") is a Michigan limited liability company with its principal place of business at 800 Whitwam Drive, Saint Joseph, Michigan. Its EIN is XX-XXX7966, and Richard J. Wallach is its managing member.

10. Defendant, United States Small Business Administration, is an independent agency of the United States Government, organized and operated under the laws and regulations of the United States of America in effect from time to time, and has a primary office at 409 Third Street S.W., Washington, D.C. 20416. SBA is responsible for the lawful administration of the RRF Program pursuant to the American Rescue Plan Act of 2021, as codified at 15 U.S.C. § 9009c. SBA administers the RRF Program. SBA's purported mission is to help Americans start, build, and grow small businesses.

11. SBA is an agency within the meaning of the Administrative Procedure Act. *See* 5 U.S.C. § 551.

12. Defendant Kelly Loeffler ("Loeffler") is the Administrator of the SBA and oversees its operations. Under Section 5003 of ARPA, Administrator Loeffler

is responsible for administering the Restaurant Revitalization Fund. Administrator Loeffler is sued in her official capacity.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this complaint under 28 U.S.C. § 1331, 28 U.S.C. § 2201, and 5 U.S.C. § 702, because this case presents a substantial question of federal law regarding the interpretation of Section 5003 of ARPA, where HVHS seeks a declaration of its rights, review of agency action, and injunctive relief under the Administrative Procedure Act.

14. This Court also has authority to issue a declaratory judgment and to order any other relief that is necessary and proper pursuant to 28 U.S.C. §§ 2201 and 2202.

15. This Court has authority to issue injunctive relief staying the effective date of agency action and preserving the status quo pending judicial review pursuant to 5 U.S.C. § 705.

16. A substantial part of the events giving rise to this claim occurred in the Western District of Michigan, and HVHS resides in this district. Venue is therefore appropriate in this district under 28 U.S.C. § 1391(e)(1), which provides that a civil action against the United States, a federal agency, or a federal officer in an official capacity may be brought in any judicial district in which a substantial part of the

events or omissions giving rise to the claim occurred, or in which the plaintiff resides.

## GENERAL ALLEGATIONS

### I. HVHS's Business and the RRF Program

17. HVHS re-alleges and incorporates by reference all prior paragraphs as though fully set forth herein.

18. HVHS owns and operates The Inn at Harbor Shores at 800 Whitwam Drive, Saint Joseph, Michigan. The Inn at Harbor Shores is a hospitality property whose primary business units include restaurants, bars, and meeting and banquet facilities, all of which are open to the public regardless of whether patrons are lodging guests. Food and beverage operations are a substantial activity of the business..

19. In 2019, food sales, non-alcoholic beverage sales, banquet income, and other restaurant revenue totaled approximately $2,663,371 on the Company's books, representing 37.3% of total operating income of $7,148,113. When the $1,074,138 in alcohol sales recorded through HVLL, LLC (EIN XX-XXX0915, the Michigan liquor-license holder) are included, combined food and beverage revenue totals $3,737,509, representing approximately 45.5% of adjusted total revenue. HVLL, LLC is a separate legal entity with its own EIN; it holds the Michigan liquor license and records all alcohol sales. HVLL, LLC is treated as a disregarded entity for

income tax purposes, and its net income flows through the Company's consolidated return. HVHS's EIN is XX-XXX7966.

20. The Restaurant Revitalization Fund was established by Section 5003 of the ARPA, codified at 15 U.S.C. § 9009c. The ARPA, signed into law on March 11, 2021, set aside $28.6 billion for grants to food and beverage businesses harmed by the COVID-19 pandemic. Pub. L. No. 117-2, § 5003, 135 Stat. 4, 85 (2021). The statute defines an "eligible entity" to include "a restaurant, food stand, food truck, food cart, caterer, saloon, *inn*, tavern, bar, lounge, brewpub, tasting room, taproom, licensed facility or premise of a beverage alcohol producer where the public may taste, sample, or purchase products, or *other similar place of business in which the public or patrons assemble for the primary purpose of being served food or drink*." 15 U.S.C. § 9009c(a)(4)(A) (emphasis added).

21. Grant recipients could use RRF funds for expenses incurred as a direct result of, or during, the COVID-19 pandemic, including payroll, rent or mortgage payments, utilities, maintenance, supplies, food and beverage costs, and other essential operating expenses. 15 U.S.C. § 9009c(c)(5). Recipients were required to use the funds during the "covered period," which ran from February 15, 2020, through March 11, 2023. *Id.* § 9009c(a)(3). Grants equaled an entity's pandemic-related revenue loss—2019 gross receipts minus 2020 gross receipts—subject to a $5 million cap per physical location. *Id.* §§ 9009c(a)(7), (c)(4).

22. An "inn" is not further defined in 15 U.S.C. § 9009c. In addition to its common meaning, an "inn" is defined in SBA's informal RRF Program Guide as a business that documents on-site food and beverage sales to the public comprising at least 33% of gross receipts. *See* **Ex. B**.

23. The statute's exclusions are exhaustive. Congress excluded only: (i) state or local government-operated businesses; (ii) entities with more than 20 locations; (iii) entities with pending or approved Shuttered Venue Operators Grant applications; and (iv) publicly traded companies. 15 U.S.C. § 9009c(a)(4)(C). Hotels are not listed as an excluded category. The statute imposes no other eligibility criteria, and nothing in it bars an eligible entity from also conducting other business activities, such as lodging.

24. Congress drafted the RRF statute to ensure businesses would not need to undergo burdensome administrative or bureaucratic registration or identification procedures, stating, "In accepting applications for grants under this subsection, the Administrator shall prioritize the ability of each applicant to use their existing business identifiers over requiring other forms of registration or identification that may not be common to their industry and imposing additional burdens on applicants." 15 U.S.C. § 9009c(c)(2)(B).

25. The statute also specifically defines when grant funds must be returned: (1) funds that an entity fails to use, or does not use because it permanently

ceases operations, by the end of the covered period (i.e., March 11, 2023), *id.* § 9009c(c)(6); or (2) when the requirements of 15 U.S.C. § 9009c(c)(4)(B)(ii) comparing estimated to actual gross receipts are met Neither circumstance applies to HVHS. The statute provides no other basis for recovering a grant and does not authorize the SBA to revisit an eligibility determination after the grant is awarded.

## II. The RRF Application and Approval

26. In May 2021, HVHS submitted an application for the Restaurant Revitalization Fund program, checking the boxes for "Restaurant," "Bar/Saloon/Tavern/Lounge," and "Inn." *See* **Ex. A**. HVHS described its business accurately and completely in its application.

27. Upon information and belief, the SBA reviewed each RRF application in two stages. First SBA verified the applicant's reported revenue against IRS data and other available sources, and second, SBA reviewed the application for eligibility and discrepancies. SBA did not disburse an award until it had confirmed the applicant's eligibility.

28. In its application, HVHS calculated its pandemic-related revenue loss as the statute requires, by subtracting its 2020 gross receipts from its 2019 gross receipts. 15 U.S.C. § 9009c(a)(7).

29. With a few inapplicable exceptions, such as those in 15 U.S.C. § 9009c(a)(4)(C), an eligible entity for an RRF grant as a restaurant, saloon, tavern,

bar, lounge, or an inn was not required by statute to satisfy additional business-related qualifying criteria. It need only show pandemic-related revenue loss. And nothing in the RRF statute prohibits a restaurant, bar, lounge, tavern or inn from offering other goods and services as part of its business.

30. As noted above, the RRF application asked for an "Inn" applicant to document on-site sales of food and beverage to the public comprising at least 33% of gross receipts. HVHS's food and beverage revenue was approximately 37.3% of total operating income on its own books and approximately 45.5% of adjusted total revenue when HVLL, LLC's alcohol sales are included—well in excess of the 33% threshold. *See* **Exs. B and M**.

31. The SBA reviewed HVHS's disclosures through its application process, including eligibility checks, IRS verification of tax information, and review of supporting documentation. It determined that HVHS was eligible and disbursed the full RRF award of $258,863.88. *See* **Ex. A**. Upon information and belief, that determination followed the SBA's due diligence and two-step verification process.

32. The statute required HVHS to use the grant funds for allowable expenses during the covered period ending March 11, 2023. 15 U.S.C. § 9009c(c)(5)-(6).

33. HVHS fully utilized the RRF grant funds for eligible expenses before March 11, 2023, as required by 15 U.S.C. § 9009c(c)(5)-(6), and submitted its Post-

Award Report certifying the use of funds in accordance with program requirements. The SBA has never alleged that any portion of the award was used for an ineligible purpose. *See* **Ex. C**.

34. The Post-Award Report was submitted to SBA on December 30, 2021. This was HVHS's final financial report and represented its closeout documentation for the grant.

35. From that moment, SBA was required to "make every effort to complete all closeout action" within one year, *i.e.*, by December 30, 2022. 2 C.F.R. § 200.344(b). SBA did not meet that deadline.

## III. The SBA's Reversal and Collection Notice

36. The SBA's first inquiry concerning the relationship between the lodging and restaurant operations came on September 12, 2023, after the grant had been approved, disbursed, and spent in accordance with the statutory mandate. The SBA asked "What is the nature of your business? " and "Does the hotel use the same EIN as the restaurants?" HVHS responded that "The primary asset of HVHS LLC is the The INN at Harbor Shores. The primary business units provide guest accommodations, restaurants, bars, meeting and banquet facilities" and answered "yes" to the shared-EIN question. That answer reflected the consolidated tax reporting HVHS LLC and HVLL LLC; it did not account for the separate EIN of the disregarded entity, HVLL LLC. *See* **Exs. C and D**.

37. On February 18, 2026, the SBA issued the Demand Letter, explaining that it had reconsidered SBA's eligibility determination from 2021 and had retroactively decided that HVHS was ineligible for the RRF program, stating, "Hotels and motels are not eligible entities. A restaurant within a hotel/motel must have a separate Tax Identification Number. (Hotels and motels are not considered 'Inns' for the purpose of the RRF program)." The determination classified HVHS as a hotel/motel based on its entity structure and operations, stated that HVHS did not qualify for RRF funding, and demanded return of the full $258,863.88. It did not identify statutory or regulatory authority for distinguishing between an inn and a hotel, reclassifying The Inn at Harbor Shores as a hotel/motel, or imposing a separate-EIN requirement. The Demand Letter was unsigned and did not identify any SBA official responsible for the decision. *See* **Ex. E**.

38. Although the RRF statute imposes no such requirement, the SBA appears to rely on a statement in its informal RRF Program Guide that eligible entities include restaurants that operate independently, with their own tax identification number, inside another business such as a hotel. To the extent the SBA relies on that statement, it misreads the RRF Program Guide to exclude, after the fact, businesses that conduct multiple activities under one EIN. Nothing in the statute requires an eligible entity to keep its food and beverage operations under an EIN separate from related lodging operations. SBA's requirement that a restaurant within

a hotel must have a separate EIN is contrary to Congress's mandate that the SBA "prioritize the ability of each applicant to use their existing business identifiers[.]" 15 U.S.C. § 9009c(c)(2)(B).

39. On March 17, 2026, HVHS timely submitted a detailed Request for Reconsideration within the 30-day period specified in the SBA's determination. HVHS explained that HVLL, LLC holds the Michigan liquor license under separate EIN XX-XXX0915, provided the IRS EIN letter for HVLL, LLC, State of Michigan licensing documentation, HVLL, LLC financial statements, and revenue calculations showing that food and beverage revenue exceeded 33.3% of gross receipts both on the Company's books alone and when HVLL, LLC's alcohol sales were included. *See* **Exs. F and M**.

40. On May 1, 2026, the SBA denied reconsideration. It repeated that hotels and motels are not eligible and that a restaurant within a hotel/motel must have a separate Tax Identification Number. The SBA relied on HVHS's September 2023 statement that the hotel and restaurant operate under the same TIN, and stated that the separate TIN provided during reconsideration "is not the Tax ID number that was used on the RRF application at origination and is not the business the RRF funds were awarded to." *See* **Ex. G**. The denial did not address HVHS's arguments or evidence and, like the Demand Letter, was unsigned and identified no responsible SBA official. On June 16, 2026, the SBA issued the Delinquency Notice, noticing

its intent to collect the full $258,863.88 through administrative offset. The Delinquency Notice was unsigned and sent by regular first-class mail without tracking or delivery confirmation. The date on which HVHS received the notice is undetermined, and it cannot determine the precise date of delivery. *See* **Ex. H**.

41. The Delinquency Notice warned that, unless HVHS paid, agreed to a repayment plan, or provided documentation showing it was not liable within 60 days, the SBA could refer the debt to the U.S. Department of the Treasury, which could add interest, collection fees, and penalties.

42. The Demand Letter, the denial of reconsideration, and the Delinquency Notice each constitute final agency action under the APA.

## **IV. Administrative Proceedings and Exhaustion**

43. On August 19, 2026, HVHS filed its Petition for Hearing with OHA, challenging the SBA's proposed collection of the $258,863.88 grant. *See* **Ex. I**. HVHS also served the Petition on the SBA's Treasury Division (RRF) at RRFWorkouts@sba.gov, the office the SBA directs debtors to contact to dispute whether a debt is delinquent or legally enforceable (the "Treasury Appeal"). See *id.*

44. The Petition and Treasury Appeal argued, among other things, that HVHS is an eligible entity, that the SBA lacks statutory authority to recoup the grant, and that no legally enforceable debt exists.

45. The SBA has never responded to the Treasury Appeal.

46. On August 20, 2026, OHA issued an Order to Show Cause regarding the timeliness of HVHS's Petition for Hearing. *See* **Ex. J**.

47. On August 27, 2026, HVHS filed its Response to the Order to Show Cause, arguing that "receipt" means actual notice rather than mere delivery; that the notice failed due process requirements because the 15-day hearing deadline was buried on page 4 of a 4-page letter; that the SBA bears the consequences of using untracked mail; and that equitable tolling applies. *See* **Ex. K**.

48. On September 1, 2026, OHA dismissed the appeal as untimely in Decision No. SBA DBT-R1022, Docket No. DBT-2026-08-19-141, finding that the appeal was filed more than 15 days after HVHS's receipt of the debt notice. *See* **Ex. L**.

49. In the dismissal order, Administrative Law Judge James Plott reasoned that OHA does not have an express delegation of authority to hear RRF appeals and stated: "Petitioner likely already possesses a RRF final agency action." *See* **Ex. L**.

50. OHA's dismissal deprived HVHS of any administrative review on the merits of the SBA's determination. As the ALJ observed, HVHS already possesses an RRF final agency action, and HVHS has no other adequate administrative remedy. *See* **Ex. L**.

51. No statute or regulation required HVHS to seek further agency review before filing this action. HVHS nevertheless pursued every avenue the SBA made

available—reconsideration, an OHA petition, and the Treasury Appeal—and has exhausted its available administrative remedies.

**COUNT I**
**VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT - AGENCY ACTION THAT IS ARBITRARY AND CAPRICIOUS, AND ABUSE OF DISCRETION, CONTRARY TO LAW, AND IN EXCESS OF STATUTORY AUTHORITY**
**(5 U.S.C. § 706)**

52. HVHS re-alleges and incorporates by reference all prior paragraphs as though fully set forth herein.

53. Defendant SBA accepted HVHS's application, reviewed the Company's disclosures through eligibility checks, IRS verification of tax information, and supporting documentation, determined that HVHS was eligible, disbursed the full $258,863.88 award, and accepted HVHS's Post-Award Report. The SBA did not ask during the original application whether HVHS was "a hotel with a restaurant in it." It now asserts, without providing statutory or regulatory authority, that The Inn at Harbor Shores is a "hotel/motel" rather than an "inn," while refusing to explain the distinction between these terms or the legal basis for its reversal.

54. The SBA's determination that HVHS was ineligible and its novel claim that a facility providing both lodging and food-and-beverage services, with more than 33% of its revenue from food-and-beverage services, is not an "inn" and must

consist of two independent businesses with separate EINs are contrary to the plain language of the statute and the program guidance and are not supported by any statute or regulation. HVHS in fact has a separate legal entity, HVLL, LLC, with its own EIN for liquor operations, yet the SBA ignored that entity and the evidence supplied during reconsideration.

55. The SBA's determination that HVHS was ineligible for the RRF grant was arbitrary, capricious, an abuse of discretion, and not in accordance with applicable law.

56. The SBA failed to properly apply the eligibility criteria to HVHS's circumstances or explain its rationale for determining that HVHS was not an eligible "inn," restaurant, or bar under the RRF program, and its demand for return of all grant funds is based on that erroneous determination.

57. Nothing in the statute creating the RRF program, or other applicable statutes, authorizes the SBA to take back the RRF grant it awarded to HVHS through offset or any other means.

58. HVHS has exhausted its available remedies with the SBA. OHA dismissed HVHS's appeal, and the SBA's determination and demand for the return of all grant funds constitute final agency action for which there is no other adequate remedy. *See* **Ex. L.**

59. The SBA's action is arbitrary, capricious; an abuse of discretion; contrary to law; and exceeds SBA's statutory authority for reasons that include the following:

(a) The RRF award is a grant rather than a loan, and neither the grant terms nor the governing law authorizes SBA to demand repayment on these facts;

(b) The SBA lacks authority to reopen an eligibility determination or recover a grant except in the two limited circumstances identified in 15 U.S.C. § 9009c, neither of which is present here;

(c) The SBA reversed its approval nearly five years later, well outside any reasonable period in which it could reconsider that determination;

(d) The SBA failed to account for HVHS's reliance on the 2021 eligibility determination, pursuant to which HVHS used the funds as the statute required;

(e) The SBA offered conclusory explanations that do not rationally connect the facts to its decision or explain its departure from its prior determination;

(f) The SBA imposed extra-statutory conditions, including a separate-EIN requirement, that Congress did not enact and that the statute's instruction to use existing business identifiers forecloses, 15 U.S.C. § 9009c(c)(2)(B);

(g) The SBA drew an unexplained line between a "hotel" and an "inn" that appears neither in the statute nor in the ordinary meaning of those terms; and

(h) The SBA disregarded HVHS's evidence, including HVLL, LLC's separate EIN and revenue figures above the SBA's own 33% threshold.

60. Pursuant to 5 U.S.C. §706, the SBA's agency action should be held unlawful and set aside.

**COUNT II**
**VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT - AGENCY ACTION THAT VIOLATES DUE PROCESS**
**(5 U.S.C. § 706)**

61. HVHS re-alleges and incorporates by reference all prior paragraphs as though fully set forth herein.

62. The APA requires a court to hold unlawful and set aside agency action that is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

63. HVHS has a protected property interest in the RRF grant it received in 2021 and spent as the statute required.

64. The Fifth Amendment bars the government from depriving HVHS of that property without notice and a meaningful opportunity to be heard.

65. The SBA demanded repayment of the entire grant without giving HVHS a meaningful opportunity to be heard. It denied reconsideration without engaging with HVHS's arguments or evidence, issued unsigned decisions that identified no responsible official, and sent the Delinquency Notice by untracked

first-class mail while burying the 15-day hearing deadline on the last page of a four-page letter.

66. OHA then dismissed HVHS's Petition as untimely without addressing the merits, and the SBA never answered the Treasury Appeal, leaving HVHS without meaningful review of the SBA's determination.

67. The SBA's action is contrary to constitutional right and should be held unlawful and set aside under 5 U.S.C. § 706(2)(B).

## COUNT III
## DECLARATORY RELIEF
## (28 U.S.C. §§ 2201-2202)

68. HVHS re-alleges and incorporates by reference all prior paragraphs as though fully set forth herein.

69. On June 16, 2026, the SBA issued HVHS a notice of intent to collect through administrative offset the full $258,863.88 grant identified by Confirmation ID c92e00125196 and SBA Loan Number XXXXXX9004, with significant and escalating consequences if the demand is not met, including Treasury referral, administrative offset, tax refund offset, credit reporting, IRS reporting, and accrual of penalties and interest. *See* **Ex. H**.

70. There exists an actual controversy between the parties regarding HVHS's eligibility for the RRF grant it was awarded and whether the SBA has any lawful authority to take back the grant it awarded HVHS in 2021.

71. The controversy is of sufficient immediacy to warrant declaratory relief, and a judicial declaration will resolve the dispute over HVHS's eligibility and the validity of the SBA's collection demand.

72. For the reasons set forth above, HVHS was an eligible entity—that is, an "inn," restaurant, and bar—that met all known requirements set out in the SBA's application, RRF Program Guide, and other program materials.

73. Moreover, the SBA lacks any legal authority to take back the RRF grant funds it awarded HVHS.

74. HVHS requests a declaratory judgment confirming its status as an "eligible entity" under the RRF program, declaring that the SBA's determination that HVHS was ineligible is unlawful, and determining that SBA's demand for return of the $258,863.88 grant is invalid and unlawful.

## PRAYER FOR RELIEF

WHEREFORE, HVHS respectfully requests that this Court enter judgment in its favor against Defendants, jointly and severally, and award the following relief:

a) Declare unlawful and set aside Defendant SBA's determination that HVHS was ineligible for the RRF grant, SBA's Demand Letter, SBA's denial of reconsideration, and SBA's Delinquency Notice;

b) Declare that HVHS was an eligible entity under applicable law and program guidance, and that the SBA's demand for return of the $258,863.88 grant is invalid and unlawful;

c) Declare that Defendant SBA and Defendant Loeffler lack legal authority to pursue or demand repayment of HVHS's RRF award.

d) Enjoin Defendants and their agents, servants, employees, successors, and all persons in active concert or participation with them from pursuing any collection activity against HVHS related to the RRF grant, including but not limited to Treasury referral, administrative offset, tax refund offset, credit reporting, IRS reporting of the alleged debt, and accrual of penalties and interest;

e) Award HVHS reasonable attorney fees, expert witness fees, and other expenses incurred in connection with this action pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412;

f) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

VARNUM LLP

By: _*/s/ Mark J. Chasteen*

Mark J. Chasteen (P81936)
Kathryn L. Ahlbrand (P83828)
Rebecca D. Krasity (P88880)
Varnum LLP
101 N. Main Street, Suite 525
Ann Arbor, Michigan 48104
Telephone: (734) 372-2900
mjchasteen@varnumlaw.com
klahlbrand@varnumlaw.com
rdkrasity@varnumlaw.com
*Counsel for Plaintiff Harbor Village at Harbor Shores, LLC*

Dated: October 19, 2026